UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00114-GNS-HBB

CHRISTOPHER RICHARDSON et al.                                    PLAINTIFFS

v.

COREY GROVES et al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment (DN 37).  The motion is ripe for adjudication.

## I.      BACKGROUND

On June 20, 2021, Plaintiffs Christopher Richardson ("Christopher"), Rebekah Richardson ("Rebekah"), and their three minor children (collectively "Plaintiffs") were traveling in their Kia Forte heading southbound in the left lane of I-65 in northern Tennessee as traffic merged left due to another accident.  (Groves Dep. 172:11-17, 174:3-12, June 6, 2023, DN 37-5; Defs.' Mot. Partial Summ. J. Ex. 5, at 10-11, DN 37-6).  Their car was struck from behind by a Ford F-350 fleet service truck driven by Defendant Corey Groves ("Groves") employed by Defendant Love's Travel Stops & Country Stores, Inc. ("Love's") and/or Defendant Speedco Truck Lube, Inc. ("Speedco") (collectively "Defendants").  (Groves Dep. 176:24-177:6; Defs.' Mot. Partial Summ. J. Ex. 5, at 10-11).  As a result of the collision, both vehicles crossed over the right lane and off the road.  (Defs.' Mot. Partial Summ. J. Ex. 5, at 10-11).  The car struck a tree, while the truck traveled farther and overturned.  (Defs.' Mot. Partial Summ. J. Ex. 5, at 10-11).  As a result of this accident, Christopher and one of his children were seriously injured, but

the other passengers in the car avoided serious injury.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. 2, DN 2, DN 41).

Christopher and Rebekah filed this action on their own behalf, and Rebekah also filed on behalf of their minor children against Groves, Love's, and Speedco.  (Am. Compl. ¶¶ 5-12, DN 20).  Plaintiffs assert claims of, *inter alia*:  (i) negligent hiring, negligent training, respondeat superior against Love's and Speedco; and (ii) gross negligence against all Defendants.  (Compl. ¶¶ 30-43, 49-51).  Defendants have moved for partial summary judgment on Plaintiffs' claims for negligent hiring, negligent training, and gross negligence, and seek dismissal of the request for punitive damages.  (Defs.' Mot. Partial Summ. J. 1, DN 37).

## II.     JURISDICTION

This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . the citizens of different States."  28 U.S.C. § 1332(a)(1).  Plaintiffs assert that there is diversity jurisdiction and that venue is proper in the Western District of Kentucky.  (Compl. ¶¶ 3-4).

## III.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party moving for summary judgment may satisfy its burden [of showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'"  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-

moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

Defendants move for partial summary judgment on Plaintiffs' claims for negligent hiring and negligent training, and gross negligence. (Defs.' Mem. Supp. Mot. Partial Summ. J. 6-21, DN 37-1). In Plaintiffs' response, they concede that there is insufficient evidence to support the claims for negligent hiring and negligent training. (Pls.' Resp. Defs.' Mot. Partial Summ. J. 7-8). Therefore, the only contested issues in Defendants' motion are Plaintiffs' claim for gross negligence and the request for punitive damages.[1]

---

[1] As this Court has noted, "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Rapier v. Coloplast Corp.*, No. 3:20-CV-00405-GNS-RSE, 2022 WL 828949, at *5 (W.D. Ky. Mar. 18, 2022) (quoting *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012))).

3

A.     __Gross Negligence__

Under Kentucky law,[2] a plaintiff seeking punitive damages must prove by clear and convincing evidence that a defendant acted with gross negligence.  *See* KRS 411.184(2); *Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998); *see also M.T. v. Saum*, 3 F. Supp. 3d 617, 624 (W.D. Ky. 2014) ("In Kentucky, 'the well established common law standard for awarding punitive damages was [and is] gross negligence.'"  (alteration in original) (citation omitted)). Before permitting an award of punitive damages, the Kentucky Supreme Court has held "there must first be a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'"  *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).  "It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation."  *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. App. 2004) (citing *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003)).

As this Court has previously noted, "Kentucky courts have largely disallowed punitive damages as matter of law in cases involving vehicle accidents."  *M.T.*, 3 F. Supp. 3d at 624.  To conclude that any motor vehicle violate qualifies as "wanton or reckless disregard for the safety of others . . . would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents."  *Id*. (internal quotation marks omitted) (quoting *Kinney*, 131 S.W.3d at 359).  The Court must therefore determine whether this is the unusual case in

---

[2] As a federal court sitting in diversity, this Court will apply Kentucky substantive law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

4

which a jury should be permitted to consider awarding punitive damages for gross negligence arising from a motor vehicle accident.

This collision occurred in an area where traffic had slowed due to another accident, and a Tennessee Highway Patrol vehicle and another emergency vehicle were present with their emergency lights activated.[3]   (Groves Dep. 172:11-174:2, 177:1-4).   The posted speed limit in the area is 70 mph.   (Defs.' Mot. Partial Summ. J. Ex. 5, at 3, DN 37-6).   Groves was traveling from the Speedco shop in Franklin, Kentucky to the Love's truck stop located in Whitehouse, Tennessee, to pick up a part for a repair.   (Groves Dep. 164:1-165:2).   Prior to the collision with Plaintiffs' car, Groves recalled switching to the left lane of the interstate and observing emergency vehicles on the right side of the road.   (Groves Dep. 172:11-174:2).   He noted that other vehicles were merging into the left lane in front of and behind him.   (Groves Dep. 174:10-12).   After merging Groves recalled looking over his shoulder at the earlier accident and believed that there was a "big gap" of about 30 feet between his truck and Plaintiffs' car.   (Groves Dep. 175:21-176:20).   Groves turned back to face the road just as the collision occurred.   (Groves Dep. 176:24-177:6).

In the five seconds prior to the collision, Plaintiffs' car had accelerated from about 20 miles per hour to about 24 miles per hour.   (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 2, at 7, DN 42-1).   As to the travel of the truck, however, the parties characterize the evidence differently.   Plaintiffs assert that Groves never braked before the collision, while Groves testified that he braked at the same time as the collision occurred.   (Pls.' Resp. Defs.' Mot. Partial Summ. J. 11; Groves Dep. 177:7-11).

---

[3] The Tennessee Highway Patrol vehicle's camera captured video of the collision in this case. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 1, DN 44).

The black box data from the truck contains two sets of data which are designated as the first record and the second record.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 3, at 7, 16, DN 41-1).  While not entirely clear, it appears that the first record relates to the collision between two vehicles and the second record relates to when the truck stopped off the side of the road. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 3, at 7).  The table of the data for the first record containing "pre-crash data" reflects that Groves was traveling 76 mph at 5.0 seconds before the collision and 75 mph between 4.5 and 0 seconds before the collision, with accelerator pedal at between 98.6% and 98.2% and with no braking.[4]  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 3, at 7).  Notwithstanding Groves' recollection that he engaged the truck's brakes prior to the collision, the black box data for the first record does not support his testimony.  Based on the data in the first record, a jury could find that Groves' driving exhibited a wanton or reckless disregard for the lives or safety of others because his truck was traveling more than 50 mph faster than Plaintiffs' car and struck their car without braking.[5]

Defendants rely on dissenting opinions of two former Kentucky Supreme Court justices in arguing that punitive damages should be prohibited as a matter of public policy.  (Defs.' Mem. Supp. Mot. Partial Summ. J. 15 (discussing *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2001) (Graves, J., dissenting); *Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483

---

[4] In contrast, the second record of "pre-crash data" reflects that the truck was traveling at 75 mph between 5.0 and 2.5 seconds before the crash event was detected, followed by deceleration to 63, 53, 50, 40, and 28 mph between 2.0 and 0 seconds before the crash.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 3, at 16).  The second record also reflects that the accelerator pedal was at 98.2% between 5.0 and 2.5 seconds before the crash, and dropped to 0% between 2.0 and 0 seconds before the crash with the anti-lock braking system engaged during that 2-second period. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 3, at 16).

[5] With the apparent speed difference of over 50 mph between the vehicles at least 3 and 5 seconds before the collision, Groves' truck would been traveling over 70 feet per second faster than Plaintiffs' car and—assuming Groves' testimony is true—traveled the entire 30-foot distance between the vehicles in less than a half a second.

(Ky. 2002) (Cooper, J., dissenting)).  Those dissenting opinions are from more than twenty years ago, and punitive damages are still recoverable under Kentucky law.  Defendants' policy argument is more appropriately raised to the Kentucky Supreme Court, which is the final arbiter of Kentucky law.

Defendants also rely on the Kentucky Court of Appeals' decision in *Kinney v. Butcher* in arguing that punitive damages are generally inappropriate in automobile accident cases.  (Defs.' Reply Mot. Partial Summ. J. 3-4, DN 45 (citing *Kinney*, 131 S.W.3d at 359)).  In *Kinney*, the tortfeasor may have been driving 10 mph over the speed limit and entered a no-passing zone without returning to his lane of travel before the collision.  *See Kinney*, 131 S.W.3d at 359.  The Kentucky Court of Appeals affirmed the trial court's denial of an award of punitive damages in that case because the facts supported only a finding of negligence.  *See id.*  As noted above, however, the facts of the instant case differ starkly from *Kinney*.  Groves was travelling approximately 50 mph faster than Plaintiffs' car, and Groves knew that vehicles were merging in front of and behind him due to the other accident.  Groves looked away from the traffic ahead of him immediately before the collision to look at the earlier accident, and there is evidence that he never braked until after the collision.  Accordingly, *Kinney* is inapplicable to the instant case.

*Miller v. Lawson*, No. 5:17-146-KKC, 2018 WL 5270179 (E.D. Ky. Oct. 23, 2018), is also distinguishable.  In *Miller*, the tortfeasor disregarded a red traffic light, and the court held that this fact alone was insufficient to support a finding gross negligence and an award of punitive damages.  *See id.* at *1.  There are additional facts in the instant case which could support a jury's finding against Defendants on this claim.

Defendants seek to distinguish the present case from *Gersh v. Bowman*, 239 S.W.3d 567 (Ky. App. 2007), which illustrates the type of conduct that could support a finding of gross

negligence and an award of punitive damages.  (Defs.' Reply Mot. Partial Summ. J. 6-7).  In addressing the tortfeasor's conduct at the time of the accident, that court noted that "[h]ad Gersh been traveling alone going thirty-four miles over the speed limit on an interstate highway we *might* conclude he was only negligent if he had an automobile accident and injured someone." *Gersh*, 239 S.W.3d at 572 (emphasis added); (*see also* Defs.' Reply Mot. Partial Summ. J. 6-7 (quoting *Gersh*, 239 S.W.3d at 572).  Thus, the reasoning in *Gersh* does not mandate the dismissal of Plaintiffs' gross negligence claim, but instead recognizes that speed alone may or may not support a finding of gross negligence depending on the facts of a specific case.

Construing the evidence in the proper light and for the reasons discussed above, a jury could find for Plaintiffs on the claims of gross negligence and award punitive damages against Defendants.  Accordingly, Defendants' motion is denied on this basis.

### B.   Vicarious Liability

Defendants also argue that Groves' employers cannot be subject to punitive damages based on vicarious liability.  (Defs.' Reply Mot. Partial Summ. J. 8-9).  In relevant part, KRS 411.184 provides that "[i]n no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."  KRS 411.184(3).  As this Court has noted, "[a]n employer should have anticipated an employee's negligence if the employee had displayed a pattern of similar behavior in the past."  *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-DW, 2018 WL 1403902, at *3 (W.D. Ky. Mar. 19, 2018) (citing *M.T.*, 3 F. Supp. 3d at 627).

The record reflects that there were concerns about Groves' driving and history of speeding in work vehicles.  In January 2020, Groves was written up for speeding in violation of

the Love's policies and procedures. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 5, at 1, DN 41-3). Love's uses GPS to track their vehicles, and there were "numerous violations [involving] Corey [] speeding in excess of up to 16 MPH on a county highway." (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 5, at 1). Groves was warned that further violations could result in discipline, which could include termination. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 5, at 1).

When Groves' employee evaluation was completed on June 13, 2020, Groves' manager, Chris Searcy ("Searcy"), noted that Groves "need[ed] to control his lead foot[.]" (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 6, at 5, DN 41-4). Then, in July 2020, Searcy completed a writeup for Groves after Groves had a speed violation of 20 miles per hour over the speed limit. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 7, at 1, DN 41-5). Groves was again warned of the consequences of further violations. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 7, at 1). Searcy testified that he perceived Groves as being an unsafe employee in terms of "the speeding and stuff like that . . . ." (Searcy Dep. 50:8-12). Searcy decided that Groves should be fired and contacted Joe Anton ("Anton"), the District Manager for Love's, to request approval for the termination. (Searcy Dep. 46:12-22, 48:4-49:4, Apr. 14, 2023, DN 41-6). Anton declined to fire Groves but instead wanted to transfer him from Love's to the Speedco shop located in Franklin, Kentucky, because, as Searcy recalled, "[w]e've got too much invested in him. We just need to transfer him." (Searcy Dep. 49:2-22).

After the transfer, Groves was supervised by Jacob Dean ("Dean"). Even before the transfer occurred, Dean had told others that he did not want Groves working at the Speedco shop because of his prior writeups. (Dean Dep. 74:12-23, Apr. 14, 2023, DN 41-8). In Groves' December 2020 evaluation, it was noted that there were concerns about Groves not following

safety rules.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 9, at 5-6, DN 41-7).  In May 2021, Groves was written up jumping in and out of the oil change bays.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 11, at 1, DN 41-9).  In June 2021, Groves received another writeup for failing to properly place and use wheel chalks.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 12, at 1, DN 41-10).  Groves' 2021 evaluation, which was completed just days before the accident, reiterated Dean's concerns about Groves' attitude and approach to safety issues.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 13, at 2, 5, DN 41-11).  While Groves did not have any reported issues with speeding while working at the Speedco shop, Dean conveyed concerns about Groves' dangerous behavior and attitude towards workplace safety.  (Dean Dep. 74:24-75:14).  Dean told others that he was afraid that someone would get hurt because of Groves.  (Dean Dep. 73:19-74:1).  Construing this evidence in the light most favorable to Plaintiffs, a jury could find that Love's and Speedco should have anticipated that Groves would engage in the conduct that led to the collision because of Groves' past speeding and disregard for safety rules.

The parties disagree about the significance of the Kentucky Supreme Court's decision in *Kentucky Farm Bureau Mutual Insurance Co. v. Troxell*, 959 S.W.2d 82 (Ky. 1997), and whether it would support an instruction seeking to impose punitive damages on an employer for the actions of its employee.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. 13-14; Defs.' Reply Mot. Partial Summ. J. 7-8).  In its decision, the Kentucky Supreme Court noted:

> We note that the Court of Appeals affirmed the admissibility of evidence pertaining to similar litigation involving Farm Bureau and adjuster Kenneth Conn. We agree that such evidence was relevant in the trial below to show that Farm Bureau was aware that this particular adjuster had previously used methods in handling claims that are unacceptable under Kentucky law and further, that Farm Bureau had knowledge of a pattern of conduct practiced by its agent. Said proof is central to satisfying the criteria contained in KRS 411.184(3) for obtaining a punitive damages instruction.

10

*Troxell*, 959 S.W.2d at 85-86.  In the present case, Love's and Speedco's knowledge of Groves' pattern of work misconduct prior to the accident could support a jury instruction on punitive damages.  *See M.T.*, 3 F. Supp. 3d at 627 ("*Troxell* emphasized that the company knew of an inappropriate *pattern* conducted by its claims adjuster while the employee *worked for* the employer." (quoting *Troxell*, 959 S.W.2d at 87)).

Finally, the parties both assert that this Court's decision in *Auto-Owners Ins. v. Aspas* supports each of their positions on Defendants' motion.  (Pls.' Resp. Defs.' Mot. Partial Summ. J. 14; Defs.' Reply Mot. Partial Summ. J. 8-10).  In *Aspas*, this Court considered a claim of gross negligence and a request for punitive damages in the context of a motion for leave to amend, not a summary judgment motion.  *See Aspas*, 2018 WL 1403902, at *1, *3-4.  This Court noted that the plaintiff failed to state a claim for gross negligence because of the lack of an allegation that the employer "had observed a pattern of [] behavior."  *Id.* *4 (citing *M.T.*, 3 F. Supp. 3d at 627).

In the instant case, Defendants contend that "[t]here is no evidence to suggest that Love's or Speedco authorized or ratified or should have anticipated the conduct in question."  (Defs.' Rely Mot. Partial Summ. J. 9).  This argument, however, is contrary to the evidence in the record, as discussed above, that Groves had been repeatedly cited for speeding and other conduct in which he disregarded safety rules, and Groves was not fired despite his supervisors' recommendation for termination and concerns that others could be hurt due to Groves' conduct.

For these reasons, a jury could find for Plaintiffs on their request for punitive damages against Love's and Speedco.  The motion is denied on this basis.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (DN 37) is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs' claims for negligent hiring and negligent training are **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, **Chief Judge**

United States District Court

February 6, 2024

cc:    counsel of record